**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SOCRAD ISABENG AKUM,

       Petitioner,

v.                                No. 1:26-cv-00401-DHU-KRS

GEORGE DEDOS, in his official capacity as
Warden of Torrance County Detention Facility;
MARY DE ANDA-YBARRA, in her official
capacity as Field Office Director of the ICE ERO;
TODD LYONS, in his official capacity as Secretary
of the U.S. DHS; and PAMELA BONDI, in her
official capacity as Attorney General of the United
States,

       Respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Socrad Isabeng Akum's Petition for Writ of Habeas Corpus ("Habeas Petition"). Doc. 2. Petitioner alleges that he is being unlawfully detained after previously being released on his own recognizance, in violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.[1] *Id.* ¶¶ 38-60. Petitioner asks this Court to order Respondents to immediately release him from custody, or, in the alternative, order Respondents to provide him with a prompt and individualized bond hearing under 8 U.S.C. § 1226(a) within seven (7) days. *Id.* at 2, 20 ¶¶ 4-5. Having considered the parties'

---

[1] Petitioner also alleges that Respondents have unlawfully detained him in violation of their own regulations and the Administrative Procedure Act ("APA") *Id.* ¶¶ 64-71. However, because the Court grants Petitioner's Habeas Petition on his INA and Due Process claims, the Court "decline[s] to address the[se] remaining claims of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

briefs and the relevant law, the Court **GRANTS** Petitioner Socrad Isabeng Akum's Petition for Writ of Habeas Corpus.

**I.**
**BACKGROUND**

1. Petitioner Socrad Isabeng Akum is a native and citizen of Cameroon who entered the United States without inspection on May 28, 2023. *Id.* at 2, ¶ 18. Since his entry, Petitioner has accrued no criminal history. *Id.* ¶ 26.

2. Shortly after his entry, Petitioner was detained my immigration officials. *Id.* ¶ 18.

3. Petitioner was issued a Notice to Appear and placed in removal proceedings. *Id.*; Doc. 2-2. His Notice to Appear charged him as a noncitizen present in the United States who had not been admitted or paroled. Doc. 2-2 at 1.

4. The next day, on May 29, 2023, Petitioner was released on an Order of Release on Recognizance. Doc. 2 ¶ 19; Doc. 2-3. Since his release, Petitioner has complied with all release requirements. Doc. 2 ¶ 23.

5. Since his release, Petitioner has also established a life in the United States. He met his fiancée, who he now has a son with. *Id.* ¶ 25. He also attends church regularly. *Id.*

6. On April 1, 2024, Petitioner filed an Application for Asylum, Withholding of Removal, and Withholding Under the Convention Against Torture. *Id.* ¶ 22.

7. On September 30, 2024, Petitioner was issued an Employment Authorization Document, better known as a work permit. *Id.* Petitioner's work permit is valid through September 29, 2029. *Id.*

8. Since being issued a work permit, Petitioner has been employed as a healthcare worker. *Id.* ¶ 24.

9. On January 5, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") while on his way home from work. *Id.* ¶ 27.

10. Petitioner was eventually transferred to the Torrance County Detention Center in Estancia, New Mexico, where he remains detained. *Id.* ¶ 28; Doc. 2-4 at 1.

On February 13, 2026, Petitioner filed a Habeas . Doc. 2. In his Habeas Petition, Petitioner argues that his custody is properly governed by 8 U.S.C. § 1226(a), rather than by 8 U.S.C. § 1225, because he was not seeking admission when he was detained. *Id.* ¶¶ 39-40. Petitioner further alleges that, when he was detained, he had been living and working in the United States for years. *Id.* ¶¶ 40, 44. Petitioner further alleges that his Order of Release of Recognizance, which expressly references § 1226, confirms that his detention is governed by 8 U.S.C. § 1226(a). *Id.* ¶ 49. Finally, Petitioner also argues that his re-detention without a re-determination hearing violated his due process rights. *Id.* ¶¶ 57-60. Petitioner asks this Court to 1) grant his Habeas Petition; 2) issue an Order to Show Cause directing Respondents to justify the factual and legal basis for his continued detention; 3) declare that his detention under § 1225 is unlawful and that his custody is governed by § 1226(a); 4) order Respondents to provide him an individualized bond hearing pursuant to § 1226(a) within seven (7) days of entry of the Court's Order; 5) in the alternative, order Respondents to immediately release Petitioner from custody; 6) declare that Respondents' categorical denial of a custody re-determination hearing violates the Due Process Clause of the Fifth Amendment; 7) enjoin Respondents from transferring Petitioner outside the District of New Mexico pending resolution of the Habeas Petition, except pursuant to further Order of this Court; 8) order Respondents to promptly return Petitioner's original documents to Petitioner or his counsel; and 9) award reasonable attorney fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). *Id.* at 19-20.

On February 23, 2026, this Court issued an Order to Show Cause, requiring Respondents to respond to the Habeas Petition within ten (10) business days. Doc. 4.

On March 12, 2026, Respondents filed their response to the Habeas Petition. Doc. 8.[2] In their response, Respondents do not dispute Petitioner's facts. *See id.* Respondents acknowledge that Petitioner is subject to the detention provisions of § 1225 or § 1226. *Id.* at 1. Respondents' position is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) based on the plain language of the statute. *Id.* at 2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026). *Id.* Respondents also concede that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* Respondents do not address Petitioner's argument his re-detention without a re-determination hearing violated his due process rights.

On March 18, 2026, Petitioner filed his reply.[3] Doc. 10. Petitioner notes that Respondents do not contest his previous release on recognizance or argue that he ever violated any release requirement. *Id.* at 3. Petitioner further notes that Respondents do not address his argument that his re-detention without a pre-deprivation hearing violated his procedural due process rights. *Id.* at 4.

---

[2] Respondents acknowledge that their response was untimely. Doc. 8 at 1 n. 1. Respondents also state that their untimeliness was due to a backlog of cases, rather than a willful disregard of this Court's Order to Show Cause, and ask that the Court consider their response on the merits. *Id.* Because of the circumstances noted, and because of the brief three (3)-day delay, the Court will consider Respondents' response on the merits.

[3] Also, on March 18, 2026, Petitioner filed an Emergency Motion for Temporary Restraining Order ("TRO"). Doc. 9. Because the Court is granting Petitioner relief in this Order, the Court **DENIES** Petitioner's Motion for TRO (Doc. 9) **AS MOOT**.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing he is being unlawfully detained in violation of the INA and the Due Process Clause.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

**A. Petitioner's Re-Detention Without a Pre-Deprivation Hearing Violated His Due Process Rights**

Petitioner argues that the Due Process Clause bars Respondents from re-detaining him without a pre-deprivation hearing. Doc. 2 ¶¶ 57-60; Doc. 10 at 4-5. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in her release from immigration custody.

5

Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to "be with family" and "be gainfully employed." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody in May 2023. Doc. 2 ¶ 19. Petitioner met his fiancée, who he now shares a son with. *Id.* ¶ 25. He was also issued a work permit in September 2024, and was employed as a healthcare worker when he was re-detained. *Id.* ¶¶ 22, 24.

This Court, and at least one other in this District, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, 806 F.Supp.3d 1246, 1252 (D.N.M. 2025) (Urias, J.) (at TRO stage, finding petitioner released by the Office of Refugee Resettlement demonstrated a substantial likelihood of success on claim that he possesses a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, No. 2:25-cv-01166-KG-DLM, 2025 WL 3564145, at * 2 (D.N.M. Dec. 12, 2025) (Gonzales, J.) (finding the same at the TRO stage for a petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

1. A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an

6

erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since May 2023 before being re-detained by ICE, during which time her interest in release grew stronger as he lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. A pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. Moreover, requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Further, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's Ongoing Detention Without a Bond Hearing Is Also Unlawful**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, as Respondents acknowledge, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to 8 U.S.C. §§ 1225 and 1226.[4] *See Requejo Roman*, --F.Supp.3d- -, 2026 WL 125681 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos*, 806 F.Supp.3d 1231 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 -DHU-KK (D.N.M. Feb.3, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293-DHU-SCY (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125-DHU-JFR (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175-DHU-LF (D.N.M. Feb. 26, 2026). Because the facts here are not materially different than those this Court analyzed in previous cases, the Court's conclusion is the same. Petitioner, who entered the United States almost three years ago, was arrested inside the United States after entering, and was released on his own recognizance, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*, --F. Supp. 3d --, 2026 WL 125681.

---

[4] The Court acknowledges that the Fifth Circuit and Eight Circuit Court of Appeals have analyzed this issue and reached the opposite conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --F.4th--, 2026 WL 819258 (8th Cir. 2026). The Tenth Circuit Court of Appeals, however, has not yet addressed the issue.

C.  **Immediate Release Is the Appropriate Remedy**

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—Respondents' initial re-detention of Petitioner without due process of law. *See, e.g.*, *E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."). In their response, Respondents fail to address this aspect of Petitioner's claim and present no arguments about the appropriate remedy in this case. *See* Doc. 8.

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *See, e.g.*, *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246  (at TRO stage, ordering immediate release of petitioner previously released by the Office of Refugee Resettlement and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by the Office of Refugee Resettlement not to be a flight risk or danger); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y.

9

July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 2) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order and subject him to the same terms as his original Order of Release on Recognizance. Unless and until Petitioner's Order of Removal becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Monday, April 20, 2026, confirming Petitioner's timely release.

**IT IS FURTHER ORDERED** that Respondents must promptly return Petitioner's original documents to him or his counsel, specifically no later than thirty (30) days from the date of this Order.

As for Petitioner's request to recover attorney fees and costs of suit, Petitioner may submit an application for such fees and costs within thirty (30) days of this Order pursuant to the EAJA, 28 U.S.C. § 2412. Respondents may respond to Petitioner's application no later than fourteen (14) days after Petitioner's application is filed with this Court.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

11